UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MANUEL OVIEDO OVIEDO (A-240-516-095),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE MESA VERDE DETENTION FACILITY, ET AL.,<br><br>Respondents. | No. 1:26-cv-04611 DC-CSK<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner Richard Manuel Oviedo Oviedo (A-240-516-095), a native and citizen of Venezuela who is proceeding without counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner entered the United States on July 24, 2023, and was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). On May 23, 2026, petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE") and has been in continuous detention since this date. This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

Petitioner is a citizen and native of Venezuela. (ECF No. 1 at 4; ECF No. 7-2 at 1.) On July 24, 2023, petitioner entered the United States with a valid U.S. Customs and Border Protection ("CBP") One appointment. (See ECF No. 1 at 5; ECF No. 7 at 1; ECF No. 7-1 at 2; ECF No. 7-2 at 1.) On this same date, a Notice to Appear issued placing petitioner in standard removal proceedings pursuant to 8 U.S.C. § 1229a (Immigration & Nationality Act ("INA") § 240)[2] for not having proper documents in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(1) (INA § 212(7)(A)(i)(I)). (ECF No. 7-2 at 1, 4.) Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). (ECF No. 7-2 at 1.) Petitioner applied for temporary work authorization and his application was approved. (ECF No. 7-1 at 2; see ECF No. 1 at 6.)

On or about May 23, 2026, petitioner was arrested for DUI and subsequently taken into ICE custody. (ECF No. 1 at 5; ECF No. 7-1 at 3.) Petitioner was not provided a pre-deprivation hearing. (ECF No. 1 at 5.) Petitioner has been in continuous detention since this date. (Id.)

## II. PROCEDURAL BACKGROUND

On June 15, 2026, petitioner filed his petition for writ of habeas corpus and motion to appoint counsel. (ECF Nos. 1, 3.) On June 27, 2026, respondents timely filed an answer to the petition. (ECF No. 7.) Petitioner did not file a reply. (See Docket.) Briefing is now complete.

## III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

[2] By contrast, standard removal proceedings are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)). Respondents do not assert that petitioner is subject to expedited removal proceedings. (See ECF No. 8.)

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his re-detention, and not limited to a claim challenging his detention as prolonged. (See ECF No. 1.) The Court also notes that respondents did not focus on prolonged detention in their response and therefore there is no prejudice to respondents in the Court's construction. (See ECF No. 7.) Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b) and he is not entitled to a pre-deprivation hearing. (ECF No. 7 at 2, 4.) Respondents cite Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b) is applicable here. (ECF No. 7 at 2.) Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (Id. at 2-3.)

### A. Due Process Claim

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their

presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner was released in July 2023 by immigration officials on parole and remained on release for over 2.5 years until he was re-detained. Petitioner therefore had a protected liberty interest in his release, regardless of which detention statute applies. See Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025); F.M.V. v. Wofford, 2025 WL 3083934, at *4-5 (E.D. Cal. Nov. 4, 2025). "The Court therefore need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in [petitioner's] continued release regardless of the applicable detention scheme." Cajina v. Wofford, 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1092-93 (E.D. Cal. 2025) (finding petitioner had a liberty interest in his continued liberty even though petitioner conceded that he was subject to mandatory detention under § 1225(b)(1)(B)(ii)); Chavarria, 2025 WL 3533606, at *5 n.3 (declining to resolve statutory basis for the petitioner's detention after determining petitioner was paroled under § 1182(d)(5)(A) and likely to succeed on the merits of due process claim). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Ramazan M. v. Andrews, 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025).

In addition, other district courts have found that non-citizens paroled into the United States pursuant to § 1182(d)(5)(A) have a protected liberty interest in their continued release. See, e.g., Chavarria, 2025 WL 3533606, at *3; Omer G. G. v. Kaiser, 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Noori v. Larose, 2025 WL 2800149, at *9-10, 14 (S.D. Cal. Oct. 1, 2025) (enjoining re-detention of petitioner previously released on parole pursuant to § 1182(d)(5)(A) during his removal proceedings without leave of the court); Rodriguez Cabrera v. Mattos, 2025 WL 3072687, at *9-11, 14 (D. Nev. Nov. 3, 2025) (ordering release of petitioner who was re-detained after he was initially released pursuant to

§ 1182(d)(5)(A)); Flores v. Chestnut, 2026 WL 504650, at *1 (E.D. Cal. Feb. 24, 2026), report and recommendation adopted, 2026 WL 689708 (E.D. Cal. Mar. 11, 2026) (finding due process violation and releasing petitioner who was re-detained after she was initially released pursuant to § 1182(d)(5)(A)).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For almost 3 years, petitioner was free from custody before his re-detention. Petitioner also obtained work authorization, worked, and supported his family. (See ECF No. 1 at 5; ECF No. 7-1 at 2.) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); J.E.H.G. v. Chestnut, 2025 WL 3523108, at *11 (E.D. Cal. Dec. 9, 2025).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Indeed, petitioner's release on parole "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); see Garro Pinchi v. Noem, 2025 WL 3691938, at *2 (N.D. Cal. Dec. 19, 2025) ("No matter which of these provisions applies to a given noncitizen, however, release is available only where a DHS officer or immigration judge has first determined that a noncitizen neither poses a threat to the public nor is likely to abscond."). While the record does indicate that petitioner was arrested for a DUI, petitioner has been detained since May 23, 2026 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [petitioner] has had an opportunity to determine whether there is any valid basis for her detention." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. July 11, 2025)). On balance, the Court finds the second Mathews factor weighs in petitioner's favor. See Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest

in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released in May 2023, reflecting a determination by immigration officials that petitioner was not a flight risk or danger to the community, which respondents do not dispute (see ECF No. 7). See Pinchi, 792 F. Supp. 3d at 1036.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

## V. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends that the petition be granted, petitioner's motion for

appointment of counsel is denied without prejudice.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is denied without prejudice.

Further/Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondents be ordered to IMMEDIATELY release petitioner Richard Manuel Oviedo Oviedo (A-240-516-095) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.
3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.
5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be

filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 27, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/ovie.4611.26.frs.imm